**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5302-16T1

TOWNSHIP OF MANALAPAN,
a Municipal Corporation of the
State of New Jersey,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

ANTHONY GENTILE, Individually
and as Executor of THE ESTATE
OF EUGENE GENTILE, EUGENE
GENTILE, and FRANK GENTILE,
Administrator of the ESTATE OF
EUGENE JOHN GENTILE,

       Defendants-Respondents/
       Cross-Appellants.

_____

       Argued January 7, 2019 – Decided June 4, 2019

       Before Judges Sabatino and Mitterhoff.

       On appeal from Superior Court of New Jersey, Law
       Division, Monmouth County, Docket No. L-3821-10.

       William J. Wolf argued the cause for appellant/cross-
       respondent (Bathgate Wegener & Wolf, PC, attorneys;

William J. Wolf, Peter H. Wegener, and Ryan S. Malc,
on the briefs).

Lawrence B. Sachs argued the cause for
respondents/cross-appellants.

PER CURIAM

The Township of Manalapan ("the Township") appeals from a jury verdict in a condemnation action initiated against owners of a forty-nine acre plot of land. The jury returned a verdict that the fair market value of the property was $4,500,000. The Township seeks a new trial, alleging that the jury award exceeds the fair market value opined by its appraiser and is therefore against the weight of the evidence. In addition, the Township claims multiple trial errors. Defendants Anthony Gentile, the Estate of Eugene Gentile, and Frank Gentile (collectively "defendants") cross-appeal from a grant of partial summary judgment that dismissed their inverse condemnation claim, and the trial court's determination of an interest rate applicable to the jury award. Having considered the evidence from the record, and in light of the prevailing legal principles, we affirm.

We recite the relevant facts and procedural history from the record. Defendants owned a 48.94 acre plot of real property in Manalapan, New Jersey ("the subject property"). Prior to May 2002, the subject property was zoned in

the R-40/20 Residential District and in the Limited Business-Tenant District, which allows for residential subdivisions on half-acre lots. On May 22, 2002, the Township adopted zoning ordinance 2002-16, which changed the zoning of several properties, including the subject property, to RE – Residential Environmental, providing for a minimum of three acres per single-family residential lot. The areas surrounding the subject property are still zoned in the R-40/20 Residential District.

In April 2010, the Township adopted a bond ordinance to acquire the subject property for $2,800,000. On August 4, 2010, the Township commenced a condemnation action against the subject property, and subsequently filed a declaration of taking on September 14, 2010. Defendants filed an answer to the condemnation complaint and a counterclaim for inverse condemnation.[1] The Township permitted defendants to continue operating their farm and produce stand on the subject property during this time, until June 30, 2012.

---

[1] Defendants had previously sued the Township for inverse condemnation on July 3, 2002. On June 22, 2009, the Honorable Lawrence M. Lawson, A.J.S.C., entered an order dismissing the 2002 complaint but preserving defendants' rights to pursue inverse condemnation damages against the Township in subsequent litigation.

A-5302-16T1

On May 18, 2015, the Honorable Lisa P. Thornton, A.J.S.C., set a trial date in the instant action and ordered "[t]hat the issues to be tried by jury between the parties hereto is the value of the lands taken and the damages, if any, including damages from inverse condemnation resulting from such taking to any remaining property as of May, 2008."

On July 29, 2016, the Township filed a motion for partial summary judgment on defendants' inverse condemnation claim. During oral argument, defendants conceded that the subject property could be subdivided into marketable parcels, although the lot yield would be less than under the zoning that existed prior to the change in May 2002.

The Honorable Katie A. Gummer, J.S.C., granted the Township's motion. Judge Gummer noted that in order to state a claim for inverse condemnation, a party must be "deprived of all or substantially all of the beneficial use of the totality of his property." Defendants "conceded at oral argument that they have not been deprived of all or substantially all of the beneficial use of the totality of the property. . . . [T]he property could have been subdivided, though at a different density. They could have continued farming, though chose not to."

On December 27, 2016, the Township filed five motions in limine, requesting the following relief: (1) declaration that defendants waived all claims

and issues, other than fair market value, as of the date of taking; (2) limiting expert opinion on fair market value to a 2010 valuation date; (3) barring respondents from utilizing a 2008 valuation date; (4) barring respondents from utilizing a 2002 valuation date; and (5) barring respondents from presenting testimony pertaining to offers to purchase their property.

Judge Gummer, after giving the parties an opportunity to brief the issue, denied the Township's motions in limine. Specifically, with respect to setting the valuation date as April 2010, the court found that granting the motion would effectively dispose of the entire case because defendants relied on the May 18, 2015 order in building their case. Judge Gummer continued,

> It would be highly prejudicial to [defendants] on the morning of trial to say that [defendants were] supposed to have a 2010 valuation and didn't. That issue could have been raised before the Court in any of the number of conferences before this Court, in any aspect of the motions filed by [the Township], it could have been raised. And it never was. Not until this motion [in] limine.

The matter proceeded to trial beginning on January 9, 2017.

The Township presented its retained appraiser, James Stuart, MAI, SRA, to opine on the subject property's market value. Stuart testified that as part of his assignment, the Township instructed him to assume that the property could yield twelve lots.

5

Stuart used the market approach in appraising the property. To determine the value of the subject property on a per-lot, rather than a per-acre, basis, Stuart examined comparable properties. Based on the comparable properties, Stuart determined that the value of the lots ranged from $203,000 and $236,250. He then took a lot value of $236,000 and multiplied it by twelve lots.

In determining the per lot value, Stuart took the subject property's location and the fact that the property has access to sanitary municipal water and the sewer system into account. The sites he compared to the subject property had well water and septic systems. Sanitary municipal water and sewer access are not typically available in rural areas such as where the subject property is located.

When asked, Stuart was initially unsure if he visited the subject property prior to the May 2008 appraisal. He denied having met defendants. Eventually, after being confronted with a prior appraisal from 2003, Stuart admitted to conducting an appraisal of the subject property for defendants and to having met defendants previously.

Defendants presented an urban planner, Paul Phillips, AICP, PP, to testify regarding the subject property's highest and best use. Prior to Phillips' testimony, the Township objected because Phillips' expert report was created for

6

the 2002 litigation and he did not create an updated report for the instant litigation. After listening to arguments from defendants and the Township, the trial court permitted Phillips to testify about a limited portion of his expert report. The court first expressed concern that Phillips' report was created for a prior litigation. However, this concern was alleviated when the court learned that both parties intended to use expert reports created for the prior litigation in the instant matter. The court limited Phillips' testimony to the following issues: (1) the physical characteristics of the subject property and the surrounding areas, and (2) his opinion regarding the highest and best use of the subject property. The trial court instructed defendants' counsel that Phillips was not permitted to opine about how to obtain a variance or the likelihood that defendants would be granted a variance.

Regarding the highest and best use of the subject property, Phillips testified that

> given where this site is located, given the surrounding development context, given the fact that there's sewer service available to the property, that I believe it's ideally suited for a development that would be generally consistent with that R20 half acre designation and that would amount to essentially a density that would be, if my math is correct, up to six times the density of the underlying RE three acre zoning.

On cross-examination, Phillips conceded that the subject property is zoned for three-acre lots, not half-acre lots. To create half-acre lots on the subject property, defendants would need to change the zoning designation or obtain a variance.

Prior to trial, defendants had provided an expert market value appraisal by Russell Sterling, MAI, CRE to the Township in discovery, and listed Sterling as a witness in its pretrial disclosures. However, defendants did not call Sterling at trial. The Township made a motion to compel Sterling's testimony. The trial court denied the Township's motion, noting

> [T]hat a party lists a witness in their pretrial disclosures does not require that party to call that person as a witness at trial. . . .
>
> So there's no guarantee in that, that any of the witnesses in fact would be called[.]

Additionally, defendants examined Anthony Gentile primarily regarding the physical characteristics of the subject property. On cross-examination, the Township attempted to elicit the market value of the subject property that Sterling provided in his appraisal. The trial court also refused to allow questioning on the contents of Sterling's appraisal, finding that the contents of the report were hearsay as the report was furnished in discovery, but not in response to interrogatories.

8

After the Township and defendants concluded their cases, the Township moved for entry of judgment in the amount of $2,830,000. The Township argued that the sole issue at trial was the fair market value of the subject property in May 2008 and that the Township's expert offered the only testimony on that issue. The trial court granted the motion in part and denied the motion in part. To prevent "rank speculation," the trial court limited defendants' summation by preventing them from suggesting that the jury could find that the highest and best use of the subject property was half-acre lots. The trial court noted that there was no expert testimony regarding the value of lots smaller than three acres, nor was there expert testimony that the jury would be able to simply divide the value of a three-acre lot to get the value of a half-acre lot. However, the trial court denied the entry of judgment for $2,830,000 because it found that the jury would not need to reach that specific amount based on the evidence presented.

The jury returned a verdict that the fair market value of the subject property in May 2008 was $4,500,000.

On January 12, 2017, the Township filed a post-trial motion for judgment notwithstanding the verdict, pursuant to Rule 4:40-2, and a motion for a new trial, pursuant to Rule 4:49-1. During oral argument, the Township argued that the jury should not have been allowed to hear Phillips' testimony regarding

smaller lots without a Rule 104 hearing to determine the likelihood that a zoning change would occur. The Township argued that Phillips' testimony allowed the jury to speculate as to the fair market value of the subject property.

The trial court denied both motions. Considering the standard for a motion for a new trial, the trial court concluded that a reasonable jury could have determined that the value was more than what the Township presented. The trial court reasoned that there were credibility issues with Stuart's testimony that a reasonable jury could have considered in weighing the evidence. The jury charge, which the Township provided, stated that the jury could accept all of the expert's testimony, accept the parts it determined were credible, or reject all of it. The charge provided that the jury's conclusions must be based on the evidence.

On May 17, 2017, defendants applied for an order setting pre-judgment interest. In an oral decision setting the interest rate in accordance with Rule 4:42-11(a)(ii), the trial court acknowledged the Township's argument that the "the jury verdict was significantly higher than the amount set forth" by the Township's appraiser. Defendants argued that "the interest rate to be utilized should at the very least be the prime rate, or perhaps the commercial rate of interest." However, "defendants provided no expert statement as to what those

A-5302-16T1

rates are, provided really no submission whatsoever as to what those rates are." In setting the rate, the trial court reasoned that New Jersey courts have affirmed setting the interest rate in accordance with Rule 4:42-11(a)(ii) when a jury maximized on the award.

This appeal and cross-appeal followed.

Standards of Review

An appellate court reviews a trial court's evidentiary rulings for abuse of discretion. Brenman v. Demello, 191 N.J. 18, 31 (2007). Thus, an appellate court will not disturb a trial court's evidentiary rulings unless they are "so wide off the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 482, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)). However, an appellate court will review questions of law de novo. Balsamides v. Protameen Chem., Inc., 160 N.J. 352, 372 (1999).

Trial errors that were brought to the attention of the court are reviewed for harmful error. "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2. Thus, if a trial judge is found to have abused his or her discretion, or otherwise erred, the appellate court must then determine whether that error amounted to harmful error, provided the alleged error was

11

brought to the trial judge's attention. See State v. Prall, 231 N.J. 567, 581 (2018) ("Our review of the evidentiary determinations cannot end our analysis when we find an abuse of discretion; rather, we must then determine whether any error found is harmless or requires reversal.").

Condemnation Generally

In a condemnation case, the State is required to pay just compensation to the property owner for the property taken. State by Comm'r of Transp. v. Caoili, 135 N.J. 252, 260 (1994). "Just compensation is 'the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act.'" Ibid. In condemnation cases,

> [j]ust compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee; or (d) the date of the declaration of blight by the governing body upon a report by a planning board pursuant to section 38 of P.L.1971, c. 361 (C. 20:3-38)[.]
>
> [N.J.S.A. 20:3-30.]

"[A]ll reasonable uses of the property bear on its fair market value. However, most relevant in ascertaining fair market value is the property's highest and best use." Caoili, 135 N.J. at 260. The highest and best use "is that use that is 1) legally permissible, 2) physically possible, 3) financially feasible, and 4) maximally productive." Cty. of Monmouth v. Hilton, 334 N.J. Super. 582, 588 (App. Div. 2000). "The reasonableness of a use of condemned property, including its highest and best use, must be considered in light of any zoning restrictions that apply to the property. Hence, the zoning restrictions that govern the use of the property are material factors in determining its fair market value." Caoili, 135 N.J. at 260.

> Because the inquiry into the uses of property is usually wide-ranging, "courts in this state have shown considerable liberality in admitting evidence of market value, particularly in terms of the highest and best use of the subject property." That evidence encompasses all "relevant facts at the time of the taking[, which] may include those that have a bearing on an available future use of the property."
>
> [Id. at 260-61 (citations omitted).]

Juries need not find that a zoning change is likely in order to consider the available future uses of real property when determining the fair market value. Id. at 264. "[T]he critical inquiry is the reasonable belief by a buyer and seller engaged in voluntary negotiations over the fair market value of property that a

13

change may occur and will have an impact on the value of the property regardless of the degree of probability." Id. at 264-65. See also State by Comm'r of Transp. v. Silver, 92 N.J. 507, 515 (1983) ("[T]he inquiry into relevant facts at the time of the taking may include those that have a bearing on an available future use of the property.").

Further,

> [w]hile it is true that the concept of just compensation should be flexible, . . . and a trial judge should have considerable discretion in a condemnation case in determining the method of proof and the materiality of evidence, that flexibility and the exercise of discretion must always result in the jurors being instructed to reach a measure of damages capable of reasonable ascertainment so that they will be prevented from speculation in reaching a verdict.
>
> [State by Comm'r of Transp. v. Cooper Alloy Corp., 136 N.J. Super. 560, 570 (App. Div. 1975) (citations omitted).]

Motion in Limine as to Valuation Date

The Township argues that the trial court erred in denying its motion in limine to set the valuation date for the subject property as April 2010. We disagree and conclude that the trial court correctly set the valuation date as May 2008.

A-5302-16T1

A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super 461, 470 (App. Div. 2015) (quoting Black's Law Dictionary 791 (9th ed. 2009)). "Even when a limited issue is presented, '[o]ur courts generally disfavor in limine rulings on evidence questions,' because the trial provides a superior context for the consideration of such issues." Ibid. (alteration in original) (quoting State v. Cordero, 438 N.J. Super. 472, 484-85 (App. Div. 2014)). However, trial judges retain the discretion to grant evidentiary motions when appropriate. Ibid. Trial judges are cautioned to use their discretion sparingly, especially when a party seeks to exclude expert testimony because such exclusion "has the concomitant effect of rendering a [party's] claim futile." Id. at 470-71 (citing Bellardini v. Krikorian, 222 N.J. Super. 457, 463-64 (App. Div. 1988)).

A motion in limine "is not a summary judgment motion that happens to filed on the eve of trial." Id. at 471. Thus, "[w]hen granting a motion will result in the dismissal of a plaintiff's case or the suppression of a defendant's defenses, the motion is subject to Rule 4:46, the rule that governs summary judgment motions[,]" which requires that motions be returnable at least thirty days prior to the scheduled trial date, unless otherwise ordered by the court. Ibid.

Furthermore, we have found that a trial court correctly exercised its discretion when it denied a motion to compel discovery which was made for the first time at trial where "the moving party had knowledge of the document [requested], failed to file a timely motion and offered no explanation of such failure." Id. at 471-72.

In the instant matter, we conclude that the trial court properly exercised its discretion by denying the Township's in limine motion to set the valuation date as April 2010 and to bar expert testimony regarding the May 2008 valuation date. See Brenman, 191 N.J. at 31; Cho, 443 N.J. Super. at 470-71. We emphasize that motions in limine are meant to be granted sparingly and we have previously warned trial judges about granting motions in limine that would render a party's claim futile. See Cho, 443 N.J. Super. at 470-71.

Here, the Township's motions would have amounted to an effective disposal of the case, in violation of the legal principles expressed in Cho. See id. at 471. As the trial court ordered on May 18, 2015 that the valuation date for trial purposes was May 2008, defendants' expert testimony was based on the May 2008 valuation date only. Had the trial court granted the Township's motions in limine, defendants would have had no expert testimony with which to defend the case.

In addition, the Township received the May 2015 order and made no attempt to appeal from it for over one year, until the eve of trial. Thus, the Township failed to respond to the order setting the valuation date in a timely manner, despite having notice of the order. See id. at 471-72.

For these reasons, we find that the trial court correctly denied the motion to bar evidence of the May 2008 valuation date.

Defendant's Planning Expert

The Township next argues that allowing defendants' planning expert to testify amounted to harmful error. We disagree and conclude that the trial court properly exercised its discretion by allowing defendants' planning expert to testify in a limited manner.

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). Expert testimony is governed by Rule 702, which

> imposes three basic requirements for the admission of expert testimony: (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.

A-5302-16T1

[State v. Kelly, 97 N.J. 178, 208 (1984).]

"Trial judges have discretion to preclude an expert from testifying to opinions not contained in his or her report or in any other discovery material." Anderson v. A.J. Friedman Supply Co., Inc., 416 N.J. Super. 46, 72 (App. Div. 2010) (citing Ratner v. Gen. Motors Corp., 241 N.J. Super. 197, 202 (App. Div. 1990)).

Further, in condemnation cases, a Rule 104 hearing may be necessary, if one party wants to elicit testimony regarding a zoning change. See Borough of Saddle River v. 66 East Allendale, LLC, 216 N.J. 115, 143 (2013). In Allendale, the trial court did not hold a Rule 104 hearing before allowing experts to testify that a bulk variance would likely be granted to the property owners. Id. at 140. The Supreme Court reversed and held that "only when the trial court has first determined that the evidence is of a quality to allow the jury to consider the probability of a zoning change should the jury be permitted to assess a premium based on that zoning change[.]" Id. at 142. The Court noted that this "gatekeeping function was assigned to the judge specifically to screen the jury from hearing mere speculation." Ibid.

Here, the trial court properly exercised its discretion in allowing Phillips to testify in a limited manner on the opinions expressed in his expert report. See

18

Townsend, 221 N.J. at 52. As the trial court found, the Township did not dispute that Phillips was qualified to render an expert opinion on planning. Furthermore, while Phillips did not submit an expert report written for the current litigation, defendants did furnish his expert report from the prior 2002 litigation to the Township during discovery. After argument from both parties' attorneys, the trial court limited Phillips' testimony to the section in his report where he opines on the "highest and best use" for the subject property. Thus, Phillips was not permitted to testify beyond the opinions expressed in his expert report. See Anderson, 416 N.J. Super. at 72.

Moreover, contrary to the Township's argument, a Rule 104 hearing was not required before allowing Phillips to testify. See Allendale, 216 N.J. at 143. Unlike the expert in Allendale, Phillips did not present testimony regarding the likelihood of a variance being granted to the subject property. See id. at 140. He merely confirmed that while his opinion was that the subject property is best suited for half-acre lots, a variance, or other zoning change, would be required before such lots would be permitted on the subject property. Thus, Phillips' testimony did not make any speculative comments regarding the likelihood of defendants' obtaining a variance. See id. at 142.

Defendant's Appraisal

The Township next argues that the trial court erred in refusing to allow the Township to present evidence of defendants' appraisal during the trial. We disagree and conclude that the trial judge correctly exercised its discretion in refusing to allow the Township to present such evidence.

An expert listed as a testifying witness may be called by an adversary, if the party who listed the witness decides not to call him. See Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 301-02 (2006). The Court has held "that access to the testifying witness is allowed and the adversary may produce a willing expert at trial." Id. at 302. However, one party's expert witness cannot be compelled to testify on behalf of an adverse party. See Graham v. Gielchinsky, 126 N.J. 361, 369 (1991). The court thus did not err in denying the Township's motion to compel Sterling to testify.

Likewise, the court properly sustained an objection to questioning of Anthony Gentile on cross-examination of the results of Sterling's appraisal. In that regard, a statement that would otherwise be hearsay may be admissible if it is an adoptive admission, or "a statement whose content the party has adopted by word or conduct or in whose truth the party has manifested belief[.]" N.J.R.E. 803(b)(2).

> A hearsay statement qualifies as an adoptive admission if two criteria are satisfied. First, the party to be charged must be aware of and understand the content of the statement allegedly adopted. . . . Second, it must be clear that the party to be charged with the adoptive admission 'unambiguously assented' to the statement.
>
> [McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 529 (2003) (citations omitted) (citing State v. Briggs, 279 N.J. Super. 555, 563 (App. Div. 1995)).]

For purposes of the "adoptive admission" exception to the hearsay rules, "[t]he report of an expert is also a statement. However, unlike an answer to an interrogatory it is not a statement of a party and therefore cannot be treated as an admission simply because a party furnished it in discovery." Skibinski v. Smith, 206 N.J. Super. 349, 353 (App. Div. 1985). "An expert's report can be admissible as an adoptive admission of a party pursuant to N.J.R.E. 803(b)(2) in some instances when the party provides the report in response to specific interrogatories and thus adopts the contents as its admission." Corcoran v. Sears Roebuck and Co., 312 N.J. Super. 117, 126-27 (App. Div. 1998) (citing Ratner, 241 N.J. Super. at 201 n.2).

Here, as acknowledged by the trial court, and all parties, the Township did not propound any interrogatories on defendants. Thus, defendants cannot be said to have adopted their expert's appraisal merely because it was furnished in discovery. See Skibinski, 206 N.J. Super. at 353. Therefore, the trial court

21

correctly precluded questioning on cross-examination about Sterling's appraisal as inadmissible hearsay.

Motion for Judgment and Renewed Motion for Judgment notwithstanding the Verdict

The Township next argues that the trial court erred by denying its motion for judgment and renewed motion for judgment notwithstanding the verdict because the jury heard only one expert opine on the value of the subject property. We disagree and conclude that the trial court properly denied the Township's motions.

"A motion for judgment, stating specifically the grounds therefor, may be made by a party either at the close of all the evidence or at the close of the evidence offered by an opponent." R. 4:40-1.  In determining whether a motion for judgment under Rule 4:40-1 or Rule 4:40-2 was properly granted, appellate courts apply the same standard the trial court applied.  Frugis v. Bracigliano, 177 N.J. 250, 269 (2003).

> If a motion for judgment is denied and the case submitted to the jury, the motion may be renewed in accordance with the procedure prescribed by R. 4:49-1 (new trial) within 20 days after the verdict or the jury's discharge.  A motion so renewed may include in the alternative a motion for a new trial, and every motion made by a party for a new trial shall be deemed to include, in the alternative, a renewal of any motion for

22

judgment made by that party at the close of the evidence.

[R. 4:40-2(b).]

The standard for a motion for judgment under Rules 4:40-1 and 4:40-2 is the same standard governing motions for involuntary dismissal:

> whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor" of the party opposing the motion, i.e., if accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion.
>
> [Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969) (citations omitted).]

Motions for judgment are generally "denied when the case rests upon issues of credibility." Alves v. Rosenberg, 400 N.J. Super. 553, 566 (App. Div. 2008) (citing Johnson v. Salem Corp., 97 N.J. 78, 92 (1984)). That "proofs are undisputed is insufficient in and of itself to warrant the grant of a motion for judgment . . . in situations in which credibility is at issue, since the fact-finder

is free to reject those uncontested proofs on credibility grounds." Ibid. (quoting Johnson, 97 N.J. at 92).

Here, we conclude that the trial court correctly denied entry of judgment. Applying the relevant legal principles, and affording all inferences in favor of defendants, a jury could find that the subject property was worth more than the stated $2,830,000. See Dolson, 55 N.J. at 5-6.

By moving for entry of judgment, the Township principally argued that the jury had no choice but to find that the subject property could not yield anything other than twelve lots which would each be valued at approximately $236,000. See ibid. However, Stuart, the Township's appraiser, conceded that his appraisal was based on the assumption that the subject property would yield twelve lots. He subsequently admitted that the lot could yield more than twelve lots. Thus, reasonable minds could differ on how many lots the subject property would yield. See ibid.

Additionally, Stuart testified that the properties to which he compared the subject property had septic systems, used well water, and had no access to sewer lines or municipal water, while the subject property has such access. He also conceded that developers prefer sites with access to sewer lines and municipal

A-5302-16T1

water. Thus, reasonable minds could differ on how much each individual lot could be worth. See ibid.

Moreover, given the contradictory nature of some of Stuart's testimony, it is of no moment that defendants did not call an appraiser as an expert witness because the jury was free to reject some or all of Stuart's testimony on credibility grounds. See Alves, 400 N.J. Super. at 566. Importantly, the jury was specifically instructed that they had the ability to evaluate all of the expert testimony for credibility and reject any testimony that they found incredible.

Thus, applying the same standard as the trial court, we conclude that the court properly denied the Township's motions for judgment and judgment notwithstanding the verdict.

Motion for New Trial

The Township next argues that the trial court erred in denying its motion for a new trial because the jury was bound by its appraisal as defendants did not offer expert testimony on the fair market value of the subject property. We disagree and conclude that the trial court correctly denied the Township's motion for a new trial.

> A new trial may be granted to all or any of the parties and as to all or part of the issues on motion made to the trial judge. . . . The trial judge shall grant the motion if, having given due regard to the opportunity of the jury

A-5302-16T1

> to pass upon the credibility of the witnesses, it clearly
> and convincingly appears that there was a miscarriage
> of justice under the law.
>
> [R. 4:49-1(a).]

"The standard governing an appellate tribunal's review of a trial court's action on a new trial motion is essentially the same as that controlling the trial judge." Dolson, 55 N.J. at 7 (citing Hager v. Weber, 7 N.J. 201, 212 (1951)).

Analyzing whether a verdict is against the weight of the evidence

> calls for a high degree of conscientious effort and
> diligent scrutiny. The object is to correct clear error or
> mistake by the jury. Of course, the judge may not
> substitute his judgment for that of the jury merely
> because he would have reached the opposite
> conclusion; he is not a thirteenth and decisive juror.
>
> [Id. at 6.]

"[T]he trial judge must . . . canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but to determine whether reasonable minds might accept the evidence as adequate to support the jury verdict." Ibid. (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962)). A motion for a new trial considers "not only tangible factors relative to the proofs as shown by the record, but also appropriate matters of credibility, generally peculiarly within the jury's domain, so-called 'demeanor evidence,' and the

intangible 'feel of the case' which he has gained by presiding over the trial." Ibid.

Here, the trial court correctly denied the Township's motion for a new trial because there was no "clear error or mistake by the jury" that needed to be corrected. See ibid. While the Township repeatedly argues that the jury had no choice but to accept its appraisal of fair market value at $2,830,000, a reasonable jury could disagree. See Dolson, 55 N.J. at 7. As explained above, Stuart's credibility was undermined concerning the number of lots the subject property would yield and the comparability of the subject lot to the lots used to determine the fair market value. Further, the jury was specifically instructed that it could accept the expert testimony or deny it, if it found the testimony to be incredible.

Moreover, Phillips, defendants' expert, testified that the subject property was best suited for zoning in accordance with the surrounding area, which allowed for smaller lots. While "the zoning restrictions that govern the use of the property are material factors in determining its fair market value," Caoili, 135 N.J. at 260, the jury here would not need to find that a zoning change is likely to consider such future uses when determining the fair market value of the subject property. See id. at 264.

For the aforementioned reasons, we conclude that none of the challenged legal rulings amount to an abuse of discretion, and we affirm the jury verdict.

On cross-appeal, defendants raise two arguments. We will address them in turn.

Inverse Condemnation

Defendants first argue that the trial court improperly granted summary judgment to the Township on defendants' inverse condemnation claim, which arose as a result of the May 2002 re-zoning of the subject property. We disagree and affirm the trial court's order granting summary judgment.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (citing Templo Fuente, 224 N.J. at 199).

"In an inverse condemnation action, a landowner is seeking compensation for a de facto taking of his or her property. To establish an inverse condemnation, requires the plaintiff to demonstrate that the governmental action destroyed all beneficial use of the plaintiff's property." Dock St. Seafood, Inc. v. City of Wildwood, 427 N.J. Super. 189, 202 (App. Div. 2011) (citations omitted). However, "not every impairment in property value establishes a taking." Ibid. (citing Karam v. Dep't of Envtl. Prot., 308 N.J. Super. 225, 235 (App. Div. 1998), aff'd 157 N.J. 187 (1999)).

In the context of regulating private property, the United States Supreme Court has "stated, 'while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.'" Mansoldo v. State, 187 N.J. 50, 58 (2006) (quoting Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922)). A regulation amounts to a taking if it "denies all economically beneficial or productive use of [the] land." Ibid. (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992)) (emphasis and alterations in original). However, "[d]iminution of land value itself does not

constitute a taking. Similarly, impairment of the marketability of land alone does not effect a taking. Also restrictions on uses do not necessarily result in taking even though they reduce income or profits." Gardner v. N.J. Pinelands Comm'n, 125 N.J. 193, 210 (1991) (citations omitted).

In the instant matter, the trial court correctly granted summary judgment to the Township on defendants' inverse condemnation claim. Defendants cannot state a claim for inverse condemnation because they cannot demonstrate that the May 2002 re-zoning of the subject property deprived them of substantially all economically beneficial or productive use of their land. See Mansoldo, 187 N.J. at 58; Dock St. Seafood, 427 N.J. Super. at 202. Defendants conceded that between May 2002, when the subject property was re-zoned, and September 2010, when the Township filed its declaration of taking, defendants were able to continue to use their land for farming.

Further, defendants primarily argue that the re-zoning of the subject property reduced the value of their land. However, "not every impairment in property value establishes a taking," Dock St. Seafood, 427 N.J. Super. at 202, and diminution in value, alone, does not amount to a taking that would give rise to a cognizable inverse condemnation claim. See Gardner, 125 N.J. at 210. Thus, defendants failed to establish a claim for inverse condemnation, and the

trial court thus correctly granted the Township judgment as a matter of law on that claim. See Conley, 228 N.J. at 346.

Interest Rate

Defendants next argue that the trial court erred by setting the interest rate pursuant to Rule 4:42-11(a)(ii) because the court should have used the commercial rate or the prime rate of interest. We disagree and conclude that the trial court correctly set the interest rate in the instant matter.

An appellate court reviews the setting of an interest rate in condemnation cases for abuse of discretion. Allendale, 424 N.J. Super. at 540. In condemnation cases,

> [i]nterest as set by the court upon the amount of compensation determined to be payable hereunder shall be paid by the condemnor from the date of the commencement of the action until the date of payment of the compensation; provided, however, that there shall be excluded from the amount upon which interest shall be calculated, all moneys deposited pursuant to Article V hereof; and provided, further, that interest payable hereunder shall be subject to abatement for rents and profits derived from the property by the condemnee during the period for which interest is payable hereunder, and/or for the fair rental value of such property or any portion thereof occupied by the condemnee during such period.
>
> [N.J.S.A. 20:3-31.]

Post-judgment interest rates are set pursuant to <u>Rule</u> 4:42-11, <u>Brown v. Davkee Inc.</u>, 324 N.J. Super. 145, 147 (App. Div. 1999), which states:

> (ii) For judgments not exceeding the monetary limit of the Special Civil Part at the time of entry, regardless of the court in which the action was filed: commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury, but the rate shall be not less than 0.25%.
>
> (iii) For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum.
>
> [<u>R.</u> 4:42-11(a).]

In determining the interest rate, the trial judge "should consider the prevailing commercial interest rates, the prime rate or rates, and the applicable legal rates of interest." <u>Allendale</u>, 424 N.J. Super. at 540 (quoting <u>Hauck</u>, 317 N.J. Super. at 594). The judge should then "select that rate or rates of interest which will best indemnify the condemnee for the loss of use of the compensation to which he has been entitled from the date on which the action for condemnation was instituted, less interest on all amounts previously deposited." <u>Ibid.</u> (quoting

Hauck, 317 N.J. Super. at 594). "[T]he Legislature has not provided a uniform rate of interest in condemnation actions[.]" Id. at 541. Without such guidance, trial courts are left to decide "the issue on a case-by-case basis without regard to some unifying framework of analysis[, which] poses substantial dangers to the rights of property owners, public entities and the judicial process itself." Id. at 541-42.

Further, the enhancement of an interest rate under section (a)(iii) typically requires some unusual circumstances. Litton Industries, Inc. v. IMO Industries, Inc., 200 N.J. 372, 390-91 (2009).

Moreover, in Allendale, the court affirmed a trial judge's setting the interest rate pursuant to Rule 4:42-11(a)(ii). 424 N.J. Super. at 540-42. The court noted that the trial judge rejected a compounded interest rate and that "[t]he jury maximized the amount of compensation, gave the defendant every dollar it sought through its experts, and in fact awarded $250,000 more than the defense counsel asked for in his summation." Id. at 541.

Here, we conclude that the trial court properly exercised its discretion in setting the interest rate pursuant to Rule 4:42-11(a)(ii). Initially, there were no "unusual circumstances" in the instant matter that would warrant enhancing the interest rate. See Litton Industries, 200 N.J. at 390-91. Defendants argued that

33

the delay in the case from the April 2010 filing to the January 2017 trial constitutes an unusual circumstance. However, as the trial court found, there is often delay in trial matters and both parties conceded that they were each responsible for delays.

Additionally, as in <u>Allendale</u>, the jury here "maximized the amount of compensation" and awarded defendants above and beyond the market value opined by the Township's appraiser. <u>See</u> 424 N.J. Super. at 541. Thus, the trial court properly exercised its discretion in setting the interest rate in accordance with <u>Rule</u> 4:42-11(a)(ii), without the enhancements of <u>Rule</u> 4:42-11(a)(iii).

To the extent any arguments are not addressed herein, they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5302-16T1