**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0273-22

KEITH THOMAS,

    Plaintiff-Appellant,

v.

TY HYDERALLY, ESQUIRE,
and HYDERALLY AND
ASSOCIATES, P.C.,

    Defendants-Respondents.

_____

        Submitted April 8, 2024 - Decided May 17, 2024

        Before Judges Sabatino, Marczyk, and Vinci.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6621-16.

        De Pierro Radding, LLC, attorneys for appellant (Giovanni De Pierro, Alberico De Pierro, and Davide De Pierro, on the brief).

        Wilson Elser Moskowitz Edelman & Dicker, LLP, attorneys for respondents (Anne M. Dalena, on the brief).

PER CURIAM

In this legal malpractice action, plaintiff, Keith Thomas, appeals from an August 12, 2022 order striking the report of plaintiff's expert as a net opinion and granting summary judgment in favor of defendants, Ty Hyderally, Esquire, and Hyderally & Associates, P.C. Based on our review of the record and the applicable legal principles, we affirm.

I.

This case arises out of defendants' limited representation of plaintiff in an underlying discrimination suit against United Parcel Service ("UPS"). In September 2007, plaintiff, pro se, filed a four-count complaint against UPS, alleging racial discrimination and harassment, retaliation, and intentional infliction of emotional distress.[1]

In November 2007, plaintiff retained defendants to assist him in a limited manner. The 2007 retainer agreement confined defendants' representation to assisting plaintiff with discovery. Specifically, the retainer agreement, in pertinent part, provided:

> This is a restricted and limited representation.
>
> This retainer applies solely and merely to our efforts to assist you in your litigation of your claims. We will not make an appearance on your behalf and are

---

[1] The discrimination case was filed in New Jersey Superior Court, but was subsequently removed to Federal District Court.

A-0273-22

not agreeing to represent you in the litigation. Our efforts will be solely and merely supportive in so far as assisting you in drafting documents and responding to defendant's requests.

At the close of discovery, UPS moved for summary judgment. Subsequently, defendants' representation of plaintiff became "plenary" in August 2010, when defendants were "officially" retained in connection with UPS's summary judgment motion. Defendants became counsel of record on August 4, 2010, and filed opposition to UPS's motion on August 23, 2010.[2] On September 9, 2010, the federal judge granted UPS's summary judgment motion, and defendants advised plaintiff accordingly.

Plaintiff and defendants also had discussions regarding an appeal. According to plaintiff, defendants informed him "you only have [forty-five] days" to file an appeal. Defendants then filed a notice of appeal in the Third Circuit on October 20, 2010. Plaintiff agreed it was filed in time. In April 2011, plaintiff sent a letter to the Third Circuit advising he would be appearing pro se. Plaintiff later testified at his deposition that he "was not under any assumption" defendants were going to represent him on appeal. Additionally, plaintiff testified, "I never . . . blame[d] [defendants] . . . about them closing my Third

---

[2] The record does not contain plaintiff's opposition brief to the summary judgment motion.

Circuit appeal after I became pro se. There would be no reason to blame [them] for that."

In September 2016, plaintiff filed a complaint against defendants alleging legal malpractice related to their representation of him in the UPS case. In January 2018, plaintiff served an affidavit of merit. Following plaintiff and Ty Hyderally's depositions, plaintiff served a liability report from his expert.

Plaintiff's expert opined in his report that defendants' first alleged breach was entering into a limited representation agreement with plaintiff. He asserted that although Lerner v. Lerner, 359 N.J. Super. 201, 217 (App. Div. 2003), and RPC 1.2(c) provide that it is permissible for attorneys to limit their representation, "in this case, [he did] not believe that the limitation was reasonable" in the context of a highly technical employment case in Federal Court. He claimed defendants should have "either denied [representing plaintiff] in its entirety or engaged [plaintiff] in a plenary fashion."

Next, the expert asserted defendants breached their duty by failing to perform a proper investigation and by filing a deficient brief in opposition to UPS's summary judgment motion. Specifically, he opined that "[b]ecause [defendants were] involved in a limited retention, [defendants] did not have a good enough grasp on what file materials [defendants] needed to defeat the

4

summary judgment motion which [defendants] knew or should have known was going to be filed." He took "no issue with the legal principles [defendants] articulate[d]," but opined defendants failed to utilize the depositions of plaintiff and other witnesses such as David Werrell and Regina Hartley in opposing the summary judgment.

Among other issues, the expert stated defendants did not procure witness testimony from those who could testify as to UPS's discriminatory practices, offered no advice as to who plaintiff should depose, did not obtain UPS's code of conduct, did not obtain discovery from a UPS supervisor, and obtained no evidence of others getting overtime pay. Therefore, he opined, defendants did not "discharge [their] duty to make a reasonable investigation into [the] case," and were "unable to file appropriate papers."

Lastly, plaintiff's expert opined defendants failed to exercise their duty to "either . . . file the appeal or advise [plaintiff] in sufficient time to do so," which "deviated from accepted standards of practice." He supported this conclusion by citing to Fuschetti v. Bierman, 128 N.J. Super. 290 (Law Div. 1974). He ultimately opined, in a conclusory manner, that these deviations were a substantial factor in causing the summary judgment motion to be granted.[3]

---

[3] The record does not include the Federal Court decision.

Plaintiff's expert was deposed on January 26, 2022. He testified he "believed" he reviewed the documents supplied by plaintiff to defendants regarding how other Black employees were treated by UPS. He could not recall all of the documents he reviewed. He testified that despite not reviewing the depositions of certain key witnesses, he, nevertheless, could state within a reasonable degree of legal certainty that the utilization of those depositions would have defeated UPS's summary judgment motion.

Regarding the scope of the 2007 limited retainer agreement, the expert testified that "if you look at the verbatim agreement, it didn't require that [defendants]" investigate who else at UPS had been the victims of discrimination. However, he testified, even if the limited retainer was permissible, defendants' conduct went outside the scope of the limited agreement.

Regarding the appeal, plaintiff's expert agreed the 2007 limited retainer agreement did not cover representing plaintiff in an appeal nor was there a separate retainer agreement that covered an appeal. However, he testified he believed plaintiff did not know the deadline for the appeal but could not identify where in the record he learned that.

6

At the conclusion of discovery, defendants moved to strike plaintiff's expert's testimony as a net opinion and for summary judgment. On August 12, 2022, the court, as discussed more fully below, granted defendants' motion and dismissed plaintiff's complaint with prejudice after finding the report was an inadmissible net opinion.

II.

Plaintiff argues the trial court erred in finding his expert's report was a net opinion and therefore erred in granting defendants' summary judgment motion. Specifically, plaintiff argues the limited retainer agreement was not reasonable, and defendants failed to perform a proper investigation despite the limited retainer agreement. Plaintiff further asserts defendants failed to utilize the deposition testimony of "several key witnesses" in opposing the summary judgment motion and that defendants failed to properly advise defendant regarding his appeal rights.

A trial court must grant a summary judgment motion if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "An issue of fact is genuine only if, considering

7

the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid.; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On appeal, we employ the same summary judgment standard. Townsend v. Pierre, 221 N.J. 36, 59 (2015). If there is no factual dispute, and only a legal issue to resolve, the standard of review is de novo and the trial court rulings "are not entitled to any special deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

However, we review a trial court's decision regarding the admissibility of expert evidence for an abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008). The abuse of discretion standard applies to evidentiary rulings regarding the evaluation, admission, or exclusion of expert testimony. Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010); State v. Torres, 183 N.J. 554, 572 (2005). An abuse of discretion occurs when a trial judge's decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005); see also State v. S.N., 231 N.J. 497, 515 (2018).

A-0273-22

A claim for legal malpractice is "a variation on the tort of negligence." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 357 (2004). To establish a prima facie case of legal malpractice, a plaintiff must demonstrate: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney to the plaintiff;[4] (2) the breach of that duty by the attorney; (3) such breach was the proximate cause of injury to the plaintiff; and (4) plaintiff sustained damages. See, e.g., Jerista v. Murray, 185 N.J. 175, 190-91 (2005); Kranz v. Tiger, 390 N.J. Super. 135, 147 (App. Div. 2007). As part of that burden, the plaintiff must show the attorney charged with malpractice owed, and in fact breached, a specific duty to his client. The proximate causation prong is satisfied when the attorney's negligent conduct is a substantial contributing factor in causing the client's loss. Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982) (citation omitted).

This case is not one of "common knowledge" in which "the questioned conduct presents such an obvious breach of an . . . obvious professional norm that the fact-finder could resolve the dispute based on its own ordinary knowledge and experience and without resort to technical or esoteric

---

[4] This element is not at issue, as the parties agree there was initially a limited retainer agreement that later expanded to plenary representation in 2010.

information . . . ." Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, PC v. Ezekwo, 345 N.J. Super. 1, 12 (App. Div. 2001) (citations omitted). Thus, expert testimony was required to establish plaintiff's legal malpractice claim.

## A.

In granting summary judgment, the trial court found plaintiff's expert's report was a net opinion. The doctrine barring the admission at trial of net opinions is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." Townsend, 221 N.J. at 53-54 (alterations in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). The net opinion principle mandates that experts "give the why and wherefore" supporting their opinions, "rather than . . . mere conclusion[s]." Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

The Supreme Court recognizes that "[t]he net opinion rule is not a standard of perfection." Ibid. It does not require that experts organize or support their opinions in a specific manner "that opposing counsel deems preferable." Ibid. An expert's failure "to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he

otherwise offers sufficient reasons which logically support his opinion." Ibid. (quoting Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002)). "Such omissions may be 'a proper "subject of exploration and cross-examination at a trial."'" Id. at 54-55 (quoting Rosenberg, 352 N.J. Super. at 402).

Even so, the net opinion doctrine does require experts to "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). An expert's conclusion should be excluded "if it 'is based merely on unfounded speculation and unquantified possibilities.'" Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

"Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record." Ibid.; see also Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 401 (2014) ("[T]he standard of care [the expert] set forth represented only his personal view and was not founded upon any objective support. His opinion as to the applicable standard of care thus constituted an inadmissible net opinion."); Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) ("[I]f an expert cannot offer objective

11

support for his or her opinions, but testifies only to a view about a standard that is 'personal,' it fails because it is a mere net opinion.").

To be sure, experts may base their opinions upon unwritten industry standards without violating the net opinion doctrine. See, e.g., Satec, Inc. v. Hanover Ins. Grp., 450 N.J. Super. 319, 333 (App. Div. 2017) (noting that an expert's opinion may be based on unwritten "generally accepted standards, practices, or customs of the . . . industry."); Davis, 219 N.J. at 413 (quoting Kaplan v. Skoloff & Wolfe, PC, 339 N.J. Super. 97, 103 (App. Div. 2001)) (recognizing that the expert's conclusions might not have been excluded as net opinions if he had referenced an "unwritten custom" of the industry). Furthermore, evidential support of an expert can be gleaned from a "text book, treatise, standard, custom or recognized practice, other than his personal view." Taylor v. DeLosso, 319 N.J. Super. 174, 182 (App. Div. 1999). Specifically in the context of legal malpractice, it is also well-established in New Jersey that "the Rules of Professional Conduct set forth an appropriate standard of care by which to measure an attorney's conduct." Baxt v. Liloia, 281 N.J. Super. 50, 57 (App. Div. 1995).

Here, plaintiff's expert opined the 2007 limited retainer agreement by itself was improper, especially in the context of a complex employment matter.

A-0273-22

Regarding the limited retainer agreement, the trial court stated the expert "did not lay out any objective criteria for evaluating whether the limitation of the representation [w]as reasonable." Thus, the court found that the expert "has not presented the [c]ourt with an objective basis apart from his own personal opinion." The court further noted, he "has not pointed to any external authority for when limited representation is or is not reasonable, nor has he explained the legal significance of the various circumstances that he enumerated as a basis for his opinion. Accordingly, this portion of . . . [the] report is a net opinion . . . ."

We are satisfied the court did not misuse its discretion in rejecting plaintiff's argument that the limited retainer agreement was improper. Plaintiff's expert contends the limited retainer agreement was disadvantageous, given the size and sophistication of a company as large as UPS. However, plaintiff fails to cite to any controlling legal authority that prevents a limited retainer in the context of an employment case. Moreover, the expert failed to cite to any customs or accepted practices of the legal profession that stand for the proposition that limited representation agreements are not permitted in employment discrimination cases. To foreclose limited representation under these circumstances would essentially leave certain plaintiffs with no representation at all, thereby forcing them to navigate the litigation process on

13

their own.  We decline to adopt such a brightline rule in employment cases.  We are mindful that plaintiffs in employment cases are often confronted by sophisticated attorneys and that certain employment cases are complex in nature, both factually and legally.  However, there are complexities in virtually every area of the law.  In that regard, limited representation allows parties to obtain at least some assistance in prosecuting or defending a case.  In situations such as this, where plaintiffs are unable to afford hiring an attorney full-time, or where attorneys are unable or unwilling to engage in a plenary representation, we conclude it is not improper for attorneys to enter into limited representation agreements in order to provide assistance to plaintiffs who are untrained or inexperienced in the law.

Plaintiff also fails to distinguish Lerner.  In Lerner, we addressed the issue of whether an attorney may limit the scope of their representation of a matrimonial client in reviewing a mediated property settlement agreement ("PSA").  359 N.J. Super. at 204.  There, the plaintiff, Lynne Lerner, was going through a divorce with her husband, Michael Lerner.  The parties had "amassed a considerable fortune" during their marriage.  Id. at 204.  A family friend and attorney, Brett Meyer, acted as a mediator and prepared a comprehensive PSA.  Ibid.  Meyer then gave the plaintiff a list of New Jersey attorneys to consult prior

to signing the agreement. Ibid. Lynne ultimately retained the defendant, William Laufer, an experienced matrimonial attorney. Id. at 205-06.

The parties entered into a limited retainer agreement. Id. at 206-07. The agreement provided Laufer had not conducted any discovery, reviewed income tax returns, or verified the plaintiff's husband's income. Id. at 205. He specifically noted that he had not been provided with the gross or net values of various properties owned by the parties or information regarding the value of the stocks they owned. Ibid. The agreement further stated that because Laufer had not been able to conduct complete discovery, including appraisals of the couple's real estate and business interests, and had not been able to conduct depositions, he was "not in a position to advise [Lynne] as to whether . . . the [PSA] [was] fair and equitable and whether or not [she] should execute the [PSA] as prepared." Ibid. The agreement continued, "[Laufer] discussed the contents of the [PSA] with [Lynne], and in [her] opinion [she was] satisfied that the [PSA] represent[ed] a fair and reasonable compromise of all issues arising from the marital relationship." Ibid. The agreement further noted Lynne was entering into the agreement freely and voluntarily and felt that she was receiving substantial assets. Ibid. Lynne later agreed to sign the PSA. Id. at 206. The

uncontested divorce was subsequently placed on the record and granted. Id. at 206-07.

Shortly after the divorce, the plaintiff became dissatisfied when one of the companies owned by her and her ex-husband was going to proceed with an initial public offering, contrary to representations made during the mediation. Id. at 208. Accordingly, she attempted to set aside the judgment of divorce as fraudulent. Id. at 208-09. The judgment of divorce was subsequently dismissed, and the parties returned to mediation and agreed to a second amended PSA. Id. at 209. The parties then appeared for a second uncontested divorce proceeding, and the terms were placed on the record. Ibid.

The plaintiff subsequently filed a malpractice action against Laufer, alleging he was negligent in representing her interests in entering into the original PSA. Ibid. Lynne's expert set forth numerous areas where Laufer was negligent, including failing to: complete any discovery, review any financial information, investigate the assets of the parties, and review the parties' tax returns. Id. at 210-13. The trial court found the parties entered into an agreement with specific limitations, and that the RPCs allowed for such an arrangement. Id. at 214. The trial court ultimately dismissed the claim on summary judgment, and we affirmed. Ibid.

We stated, "RPC 1.2(c) expressly permits an attorney with the consent of the client after consultation to limit the scope of representation." Id. at 217. We further noted, "what constitutes a reasonable degree of care is not to be considered in a vacuum but with reference to the type of service the attorney undertakes to perform." Ibid. (quoting Ziegleheim v. Apollo, 128 N.J. 250, 260 (1992)). We observed, "[t]o us that means if the service is limited by consent, then the degree of care is framed by the agreed service." Ibid. We noted the plaintiff's expert failed to establish "an authoritative or recognized standard of care that rises above RPC 1.2(c) . . . ." Id. at 217-18. Importantly, we concluded, "[w]e, therefore, see no just reason in law or policy to deny attorneys practicing matrimonial law the right to assert as a defense to claims of malpractice that they were engaged under a precisely drafted consent limiting the scope of representation." Id. at 218. We further explained, "[w]e hold it is not a breach . . . for an attorney under a signed precisely drafted consent agreement to limit the scope of representation to not perform such services in the course of representing a matrimonial client that he or she might otherwise perform absent such a consent." Ibid. We ultimately held that Laufer did not breach the duty of care by performing no discovery or investigative services based on the limited retainer agreement. Ibid.

17

Here, we cannot say the matrimonial action involving significant assets in Lerner is any less complicated than an employment case. Accordingly, we see no reason to carve out an exception to the limited retainer agreements permitted by RPC 1.2(c) for employment actions as urged by plaintiff. We agree that in most circumstances full representation would be better for a client in a particular case, but that is not always feasible for a variety of reasons. However, once parties enter into an agreement that limits the scope of representation, the parties should be bound by that agreement.

Plaintiff here also argues that defendants at times provided services beyond the limited scope of the representation. A similar argument was advanced in Lerner, and we rejected it, noting Laufer's role as set forth in the agreement was "clear and concise," and there was no evidence that he altered the plaintiff's expectations or changed the plaintiff's demands for the services she requested. Id. at 219. Similarly, here, there is no indication that any advice or services that may have been rendered outside of the scope of the limited retainer agreement caused plaintiff to believe the terms of the agreement were somehow meaningfully changed.

18

In short, we are satisfied, based on <u>Lerner</u> and RPC 1.2(c), the limited retainer agreement was not improper under the facts of this case. Therefore, the trial court did not err in finding plaintiff's expert's report was a net opinion.

B.

Next, plaintiff argues defendants failed to properly perform an investigation despite the limited retainer agreement, and defendants failed to properly oppose UPS's summary judgment "by only making legal arguments rather than substantiating the legal arguments with the evidence that they had in their possession." Plaintiff asserts defendants failed to reference certain depositions in opposing the summary judgment motion.

Initially, we reiterate defendants were retained on a limited basis, and we concluded above there was no inherent deviation by entering into the limited retainer agreement. The trial court noted, "[t]here is no objective basis provided for the finding that the defendant[s'] limited representation of the plaintiff was itself a breach and as such there's no objective basis for the finding that the defendant[s'] opting not to take certain actions pursuant to the limitation constituted a breach . . . ." It is not clear how defendants were responsible for not conducting certain investigations given the language of the retainer agreement which confined their duties to being "merely supportive" and to

"assist[] . . . in drafting documents and responding to defendant's requests." As such, we are unpersuaded that the trial court erred in rejecting this argument and deciding plaintiff's expert's report was a net opinion as to this issue.

Regarding defendants' alleged breach in opposing UPS's summary judgment, we are likewise unconvinced by plaintiff's arguments. The trial court noted,

> [plaintiff's expert] further cataloged several sources of material that defendant did not pursue or include in his opposition to summary judgment, yet . . . [the expert] once again did not provide any guidance, guideline, standard or practice for how the [c]ourt should evaluate when an attorney, in preparing [an opposition to a] motion for summary judgment, has breached his duty . . . of care . . . .

The trial court further noted plaintiff did not identify with "sufficient particularity" what defendants failed to do so as to establish a breach of duty. The court stated, "[t]he report did not discuss [the judge's] decision or why [the judge] ruled for UPS. The report does not show in any way how the action that the plaintiff alleges defendant could have taken, but didn't, would have rendered a different result . . . ." The judge further explained:

> [plaintiff's expert]'s report does not [provide] any basis for finding that he himself was familiar with the materials that he alleged the defendant should have relied upon in his opposition to summary judgment.

> . . . . The onus is on the expert to clearly explain the basis for his opinion, including in . . . this instance whether or not he or she is personally familiar with the materials that he claims should have been included. . . . [The expert] has not done so here. A report that claims summary judgment would have been denied had the attorney introduced depositions, the contents of which remain unspecified in the report, cannot serve as a basis for a finder of fact to establish causation. The [c]ourt finds that this is a net opinion regarding causation.

Plaintiff's expert failed to articulate why certain evidence omitted from the opposition to the summary judgment motion was a breach of defendants' duty to plaintiff. For example, he opined defendants failed to rely upon the depositions of Werrell, plaintiff's manager at UPS, and Hartley, UPS's regional human resources director, because they provided favorable testimony for plaintiff. However, the expert does not remember reviewing these depositions. He was asked, "[s]o you believe that you can state within a reasonable degree of certainty that evidence that you have never seen would have defeated a motion for summary judgment; that is what you are saying? Yes or no?" He responded, "[y]es, that it what I am saying." This bald proclamation is inadequate. To opine that defendants' failure to utilize certain depositions established a breach—without having actual knowledge of the substance of such depositions—constitutes a net opinion, and the expert does not establish why such omissions would have been dispositive.

21

Plaintiff does not, much like his expert, specify the documents defendants failed to review or the portions of any depositions or other documents that were not utilized in opposing the summary judgment. More importantly, plaintiff does not state how those materials would have altered the outcome of the Federal Court's decision. Plaintiff also does not identify "standards accepted by the legal community" relied upon by his expert. We are essentially left to engage in conjecture as to what certain unidentified documents would have revealed. Moreover, as to the documents that were identified, there is no reference to specific testimony that would have impacted the outcome of the summary judgment decision. In short, the trial judge did not misuse his discretion in striking the report as a net opinion regarding defendants' alleged failure to properly oppose UPS's motion for summary judgment.

C.

Lastly, plaintiff argues the judge erred in finding the expert's report was a net opinion regarding defendants' alleged failure to advise plaintiff regarding his right to appeal.

The expert opined in his report that "defendant[s] deviated from accepted standards of practice" because they did "not fil[e] the appeal in a[n] appropriate time frame," which "led to the appeal being dismissed." He relied on Fuschetti,

22

128 N.J. Super. at 290, to support his opinion.  However, the court distinguished Fuschetti and found the report was a net opinion, stating Fuschetti was "unrelated to the question of providing notices of deadlines to appeal.  Rather, the case addressed the malpractice claim of a plaintiff who asserted that an attorney whom she thought would represent her failed to do, potentially causing her statute period to run."

We affirm the trial court's decision, but we do so for a different reason than those articulated by the trial court.  See T.B. v. Novia, 472 N.J. Super. 80, 93 (App. Div. 2022) (stating that because "appeals are taken from orders and judgments, not a trial judge's statement of reasons or written decisions," appellate courts can affirm summary judgment orders for reasons other than those expressed by the motion court); see also Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001).

Here, there is no indication in the record plaintiff was not aware of his right to appeal.  Indeed, plaintiff testified that defendants informed him "you only have [forty-five] days" to file an appeal.  The expert's report makes no mention of defendants informing plaintiff of the time period for an appeal.  Moreover, defendants filed a notice of appeal with the Third Circuit on October 20, 2010, which plaintiff agreed was filed in time.  Furthermore, plaintiff

testified at deposition that he "was not under any assumption" that defendants were going to represent him on appeal. As such, it is unclear how the expert came to the conclusion defendants neither "file[d] the appeal [n]or advise[d] [plaintiff] in sufficient time to do so." Additionally, plaintiff testified, "I never . . . blame[d] [defendants] . . . about them closing my Third Circuit appeal after I became pro se. There would be no reason to blame [them] for that."

Accordingly, the trial court did not misapply its discretion in finding the expert's report was a net opinion regarding defendants' alleged failure to advise plaintiff about his appeal rights. Moreover, as discussed above, plaintiff has not established how defendants' alleged deviations on the other issues resulted in the court granting summary judgment. In the same manner, plaintiff has not set forth substantively what issues should have been raised on appeal that would have altered the outcome of the federal action.

Based on our conclusion that the trial court did not misapply its discretion in striking plaintiff's expert's report as a net opinion, we determine the court properly granted summary judgment. To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0273-22